# United States Tax Court

159 T.C. No. 5

GREEN VALLEY INVESTORS, LLC, ET AL.,[1]
BOBBY A. BRANCH, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 17379-19, 17380-19,
17381-19, 17382-19.

Filed November 9, 2022.

————

P timely petitioned this Court challenging the IRS's adjustments in notices of final partnership administrative adjustment regarding charitable deductions related to syndicated conservation easement transactions listed under I.R.S. Notice 2017-10, 2017-4 I.R.B. 544. The parties filed Cross-Motions for Partial Summary Judgment seeking summary adjudication as to the imposition of penalties in these consolidated cases. P principally contends that I.R.C. § 6662A penalties cannot be imposed for two reasons: (1) the IRS seeks to improperly impose such penalties retroactively and (2) the IRS failed to comply with the notice-and-comment rulemaking procedures of the Administrative Procedure Act (APA) when issuing Notice 2017-10. R contends that Notice 2017-10 was properly issued without notice-and-comment rulemaking and that he is entitled to partial summary judgment.

————

[1] The following cases are consolidated herewith: Vista Hill Investments, LLC, Bobby A. Branch, Tax Matters Partner, Docket No. 17380-19; Big Hill Partners, LLC, Bobby A. Branch, Tax Matters Partner, Docket No. 17381-19; and Tick Creek Holdings, LLC, Bobby A. Branch, Tax Matters Partner, Docket No. 17382-19.

*Held*: Notice 2017-10 is a legislative rule, improperly issued by the IRS without notice and comment as required under the APA.

*Held, further*, Notice 2017-10 will be set aside by the Court, and P's Cross-Motions for Summary Judgment will be granted in part prohibiting the imposition of I.R.C. § 6662A penalties in these consolidated cases.

––––––––––

*Vivian D. Hoard, Kip D. Nelson, Richard A. Coughlin, Brian C. Bernhardt*, and *Elizabeth K. Blickley*, for petitioner.

*Emily J. Giometti, Kirsten E. Brimer, Clint J. Locke, Kimberly B. Tyson, Mary Helen Weber, Travis Vance*, and *Angela B. Reynolds*, for respondent.

## OPINION

WEILER, *Judge*: On December 3, 2021, the Commissioner of Internal Revenue (respondent) filed a third Motion for Partial Summary Judgment,[2] seeking summary adjudication in each of these consolidated cases (third Motions for Partial Summary Judgment) on the issue of whether the Internal Revenue Service (IRS) complied with the requirements of section 6751(b)(1) as applied to the gross valuation misstatement penalty under section 6662(h), the substantial valuation misstatement penalty under section 6662(e), the negligence penalty under section 6662(b)(1) and (c), and the reportable transaction penalty

––––––––––

[2] In each of these consolidated cases respondent has twice before moved for partial summary judgment. By separate order, the court will rule on respondent's Motions for Partial Summary Judgment regarding the issue of whether the IRS complied with the requirements of section 6751(b)(1). Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

under section 6662A.[3] Then on December 14, 2021, petitioner[4] in these consolidated cases filed Motions for Summary Judgment (Cross-Motions for Summary Judgment) regarding respondent's assertion of two penalties—sections 6662(h) and 6662A.[5]

In the Cross-Motions for Summary Judgment petitioner makes two arguments against the penalties asserted under section 6662A. First, petitioner contends that penalties under section 6662A may not be asserted in these cases since any assessment of them would be made retroactively after the issuance of I.R.S. Notice 2017-10, 2017-4 I.R.B. 544; and second, the issuance of Notice 2017-10 failed to comply with the notice-and-comment provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706.

On January 7, 2022, petitioner filed a written objection to respondent's third Motions for Partial Summary Judgment. Petitioner's principal argument is that respondent cannot assess penalties under section 6662A as a matter of law.

On February 11, 2022, respondent filed a written objection to petitioner's Cross-Motions for Summary Judgment. In the objection, and among other arguments not relevant to this report, respondent contends petitioner has failed to show and establish that section 6662A penalties are not applicable to the transactions at issue in these consolidated cases pursuant to Notice 2017-10. Respondent further contends that Notice 2017-10 was properly issued without notice-and-comment rulemaking, and that he is entitled to partial summary judgment as prayed for in his third Motions for Partial Summary Judgment.

---

[3] The tax year at issue for Green Valley Investors, LLC (Green Valley), Big Hill Partners, LLC (Big Hill), and Tick Creek Holdings, LLC (Tick Creek), is 2014, while the tax year at issue for Vista Hill Investments, LLC (Vista Hill), is 2015.

[4] In these consolidated cases Bobby A. Branch is the petitioner and tax matters partner for four entities: Green Valley, Vista Hill, Big Hill, and Tick Creek. We refer to these entities individually as "LLC" and collectively as "the LLCs." Since Mr. Branch is the tax matters partner in each of these consolidated cases, we will collectively refer to the tax matters partner for the LLCs in the singular and as "petitioner" throughout this report.

[5] This report will address only petitioner's Motions regarding respondent's determination of section 6662A penalties. The Court will, by separate order, address petitioner's Cross-Motions for Partial Summary Judgment with respect to section 6662(h) penalties.

*Background*

The following facts are drawn from respondent's third Motions for Partial Summary Judgment, petitioner's Cross-Motions for Summary Judgment, declarations and exhibits thereto, and the parties' respective written objections. These facts are stated solely for purposes of ruling on the parties' Motions herein.

By deed recorded on December 31, 2014, Green Valley, Big Hill, and Tick Creek each granted a conservation easement to Triangle Land Conservancy (TLC). On December 3, 2015, Vista Hill did the same. Green Valley, Big Hill, and Tick Creek each timely filed Forms 1065, U.S. Return of Partnership Income, for tax year 2014, and Vista Hill timely filed Form 1065 for tax year 2015. On its Form 1065 Green Valley deducted $22,559,000 for its charitable easement contribution to TLC for the tax year 2014. Similarly, Big Hill and Tick Creek deducted contributions of charitable easements of $22,626,000 and $22,605,000, respectively. Vista Hill deducted $22,498,000 on its Form 1065 for its charitable easement contribution for tax year 2015.

On December 23, 2016, the IRS issued Notice 2017-10. Notice 2017-10 identified all syndicated conservation easement transactions beginning January 1, 2010, including all substantially similar transactions, as "listed transactions" for purposes of Treasury Regulation § 1.6011-4(b)(2).

The IRS conducted examinations of Green Valley's, Vista Hill's, Big Hill's, and Tick Creek's respective Forms 1065. By notices of final partnership administrative adjustment (FPAA) issued to the LLCs on June 24, 2019, the IRS disallowed the claimed deductions for noncash charitable contributions because the LLCs (1) did not establish that the deductions met all requirements pursuant to section 170 and (2) failed to establish that the values of the property interests contributed exceeded zero. In addition each FPAA asserted a gross valuation misstatement penalty under section 6662(h), a substantial valuation misstatement penalty under section 6662(e), a negligence penalty under section 6662(b)(1) and (c), and a substantial understatement penalty under section 6662(b)(2) and (d). Respondent's Answers asserted the additional reportable transaction penalty under section 6662A.

On September 20, 2019, petitioner timely petitioned this Court challenging the FPAA determinations. When the Petitions were filed, the LLCs' principal places of business were in North Carolina.

*Discussion*

I.  *Summary Judgment*

A party may move for summary judgment regarding all or any part of the legal issues in controversy. *See* Rule 121(a); *Wachter v. Commissioner*, 142 T.C. 140, 145 (2014). We may grant summary judgment if the pleadings, stipulations and exhibits, and any other acceptable materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. *See* Rule 121(a) and (b); *see also CGG Ams., Inc. v. Commissioner*, 147 T.C. 78, 82 (2016); *Elec. Arts, Inc. & Subs. v. Commissioner*, 118 T.C. 226, 238 (2002). We construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate. *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The moving party has the burden of proving that there is no genuine issue of material fact. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). However, the nonmoving party may not rest upon the mere allegations or denials in its pleadings but instead must "set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

II.  *Application of Section 6662A Penalties*

Section 6662A was enacted as part of the American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, § 812(a), 118 Stat. 1418, 1577. It is effective for tax years ending after October 22, 2004. *Id.* § 812(f), 118 Stat. at 1580. Section 6662A(a) provides: "If a taxpayer has a reportable transaction understatement for any taxable year, there shall be added to the tax an amount equal to 20 percent of the amount of such understatement." The penalty is increased from 20% to 30% of the amount of the understatement if the disclosure requirements of section 6664(d)(3)(A), requiring disclosure in accordance with the regulations prescribed under section 6011, are not met. I.R.C. § 6662A(c). Section 6662A penalties apply to any item which is attributable to any "listed transaction." I.R.C. § 6662A(b)(2)(A).

After the enactment of the AJCA, temporary regulations were issued, including Temporary Treasury Regulation § 1.6011-4T(b)(2)

defining the term "listed transaction" to include those types of transactions which the IRS has determined to be tax avoidance transactions and identified by notice, regulation, or other form of published guidance. *See* T.D. 9350, 2007-38 I.R.B. 607. This temporary regulation was published, and the IRS requested comments. Additional notice and request for comments was published by the IRS in Notice 2005-11, 2005-1 C.B. 493, and Notice 2005-12, 2005-1 C.B. 494, as amended.[6] Final regulations were published, the IRS requested comments as to Treasury Regulation § 1.6011-4, and the term "listed transaction" continued to be defined as a transaction that is the same or substantially similar to one of the types of transactions that the IRS has determined to be tax avoidance transactions and identified by notice, regulation, or other form of published guidance. Treas. Reg. § 1.6011-4(b)(2).

It is undisputed that Notice 2017-10 was issued after the LLCs filed the returns at issue. It is also undisputed that Notice 2017-10 identified certain syndicated conservation easement transactions as tax avoidance transactions classified as "listed transactions" for purposes of Treasury Regulation § 1.6011-4 and sections 6111 and 6112. *See* Notice 2017-10, § 3, 2017-4 I.R.B. at 545. Petitioner does not dispute that the transactions at issue are the same or substantially similar to the certain syndicated conservation easement transactions described in Notice 2017-10.

Effective December 23, 2016, Notice 2017-10 identifies certain transactions for purposes of Treasury Regulation § 1.6011-4(b)(2) and sections 6111 and 6112. The notice includes transactions entered into on or after January 1, 2010, that are the same as or substantially similar to certain syndicated conservation easement transactions described in the notice. Notice 2017-10 states that taxpayers who have entered into a listed transaction or transactions of interest "must disclose the transactions as described in [Treasury Regulation §] 1.6011-4 for each taxable year in which the taxpayer participated in the transactions, provided that the period of limitations for assessment of tax has not ended on or before December 23, 2016." On the basis of this text, the Court finds that Notice 2017-10 is applicable to the 2014 and the 2015 transactions at issue.

---

[6] These notices alerted taxpayers to the recent enactments and invited comments from the public regarding rules and standards relating to section 6707A and sections 6662A, 6662, and 6664, as amended.

Petitioner cites the definition section found in section 6707A(c)(2) as an indication that the terms Congress uses are in the past tense. Similarly, petitioner cites Treasury Regulation § 1.6011-4 for the proposition that the IRS must identify a transaction as being a reportable transaction prospectively. However, respondent notes that Treasury Regulation § 1.6011-4(e)(2) addresses the issue at hand—namely, the duty on taxpayers to disclose a previous transaction within 90 calendar days from the date in which the prior transaction became a listed transaction or transaction of interest, so long as the period of limitations for assessment remains open.

We have previously upheld the retroactive application of penalties, even though the taxpayers became subject to the penalties after they had entered into the transactions or after their tax returns had been filed. *See Soni v. Commissioner*, T.C. Memo. 2013-30, at *8–9; *see also Kenna Trading, LLC v. Commissioner*, 143 T.C. 322, 371–72 (2014), *aff'd sub nom. Sugarloaf Fund, LLC v. Commissioner*, 911 F.3d 854 (7th Cir. 2008); *Patin v. Commissioner*, 88 T.C. 1086, 1127 n.34 (1987), *aff'd without published opinion*, 865 F.2d 1264 (5th Cir. 1989), *and aff'd sub nom. Gomberg v. Commissioner*, 868 F.2d 865 (6th Cir. 1989), *Skeen v. Commissioner*, 864 F.2d 93 (9th Cir. 1989), and *Hatheway v. Commissioner*, 856 F.2d 186 (4th Cir. 1988) (per curiam) (unpublished table decision); *McGehee Family Clinic, P.A. v. Commissioner*, T.C. Memo. 2010-202.

Petitioner also cites *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988), in which the Supreme Court struck down the retroactive application of a newly promulgated regulation by the Department of Health and Human Services.

On the basis of our findings *infra* Part III, we conclude that these cases do not require us to decide whether section 6662A penalties can be applied retroactively. Accordingly, we refrain from doing so.

III.   *Notice-and-Comment Rulemaking Requirements*

The APA provides a three-step procedure for "notice-and-comment rulemaking" whereby agencies are required to (1) issue a general notice of proposed rulemaking, (2) allow interested persons an opportunity to participate, and (3) include in the final rule a "concise general statement of [its] basis and purpose." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (quoting 5 U.S.C. § 553(c)). However, "[n]ot all 'rules' must be issued through the notice-and-comment process. . . .

[T]he notice-and-comment requirement 'does not apply' to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Id.* (quoting 5 U.S.C. § 553(b)(A)). "The APA also recognizes that Congress may modify these requirements, but provides that a '[s]ubsequent statute may not be held to supersede or modify this subchapter . . . except to the extent that it does so expressly.'" *Asiana Airlines v. FAA*, 134 F.3d 393, 396 (D.C. Cir. 1998) (quoting 5 U.S.C. § 559).

Notably, the Supreme Court has affirmed a material advisor's right to challenge an IRS notice as violative of the APA. *See CIC Servs., LLC v. IRS*, 141 S. Ct. 1582 (2021). Other federal courts have recently wrestled with the issue before this Court. In *Mann Construction, Inc. v. United States*, 539 F. Supp. 3d 745 (E.D. Mich. 2021), the district court held that Congress authorized the IRS to promulgate Notice 2007-83, 2007-2 C.B. 960, without the requirement of having to first provide notice and comment under the APA; however, this decision was later reversed by the U.S. Court of Appeals for the Sixth Circuit in *Mann Construction, Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022). While in *CIC Services, LLC v. IRS*, No. 3:17-CV-110, 2021 WL 4481008 (E.D. Tenn. Sept. 21, 2021), the district court granted a preliminary injunction in favor of the taxpayer, finding the taxpayer was likely to prevail on its challenge of Notice 2016-66, 2016-47 I.R.B. 745, on the basis of the IRS's failure to first comply with the APA's notice-and-comment requirements.[7]

Respondent makes two arguments identical to those made by the United States in *Mann Construction*; namely, that (1) Notice 2017-10 was an interpretative rather than legislative rule and (2) even if Notice 2017-10 were a legislative rule, Congress has authorized its issuance by procedure other than the notice-and-comment requirements under the APA.

### A. *Is Notice 2017-10 an Interpretative or Legislative Rule?*

Legislative rules impose new rights or duties and change the legal status of regulated parties. *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1340 (4th Cir. 1995); *see Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (explaining that legislative rules impose new rights or

---

[7] *See also Liberty Glob., Inc. v. United States*, No. 1:20-CV-03501, 2022 WL 1001568 (D. Col. Apr. 4, 2022) (granting partial summary judgment after finding temporary treasury regulations related to section 245A were invalid since they were not promulgated in compliance with the APA's notice-and-comment requirements).

duties and change the legal status of the parties, whereas interpretative rules articulate what an agency thinks a statute means or remind parties of pre-existing duties). Interpretative rules merely advise the public of an agency's construction of the statutes it administers. *Mortg. Bankers Ass'n*, 575 U.S. at 97. Unlike interpretative rules, legislative rules have the force and effect of law. *Id.* at 96.

The Sixth Circuit recently addressed respondent's first argument, finding Notice 2007-83, entitled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits," to be a legislative rule requiring the IRS to comply with notice-and-comment requirements under the APA. *Mann Constr., Inc.*, 27 F.4th at 1143–44. Like the Sixth Circuit, we find Notice 2017-10 to be a legislative rule.

Congress tasked the IRS with determining "by regulations" how taxpayers are to "make a return or statement" and the information they must provide therein to the IRS. *See* I.R.C. § 6011(a). Under section 6707A, Congress likewise delegates authority to determine which transactions are reportable transactions as having "a potential for tax avoidance" or that are "the same as, or substantially similar to, a transaction" deemed "a tax avoidance transaction." I.R.C. § 6707A(c)(1). Notice 2017-10, 2017-4 I.R.B. at 544–45, purports to carry out this delegation of authority, and states in part:

> This notice alerts taxpayers and their representatives that the transaction described in section 2 of this notice is a tax avoidance transaction and identifies this transaction, and substantially similar transactions, as listed transactions for purposes of § 1.6011-4(b)(2) of the Income Tax Regulations (Regulations) and §§ 6111 and 6112 of the Internal Revenue Code (Code).

The act of identifying a transaction as a listed transaction by the IRS, by its very nature, is the creation of a substantive (i.e., legislative) rule and not merely an interpretative rule.[8] *See* 5 U.S.C. § 553.

---

[8] Many of the provisions discussed *infra* were enacted or substantially modified in 2004 as part of AJCA §§ 811–822, 118 Stat. at 1575–87. These provisions substantially changed the reporting and recordkeeping requirements for listed and other reportable transactions. This report offers no opinion on whether identifying a transaction as a listed transaction was substantive rulemaking before the enactment of the AJCA or whether Congress expressed its intent to exempt from the standard

Identifying a transaction as a listed transaction does not merely provide the IRS's interpretation of the law or remind taxpayers of preexisting duties. Rather, and as we will detail below, identifying a transaction as a listed transaction imposes new duties in the form of reporting obligations and recordkeeping requirements on both taxpayers and their advisors. Notice 2017-10 exposes these individuals to additional reporting obligations and penalties to which they would not otherwise be exposed but for the notice. Creating new substantive duties and exposing taxpayers to penalties for noncompliance "are hallmarks of a legislative, not an interpretive, rule." *Mann Constr., Inc.*, 27 F.4th at 1144.

### 1. *Reporting Obligations on Taxpayers*

The IRS's act of identifying a transaction as a listed transaction imposes a reporting obligation on any taxpayer who participated in such a transaction. *See* Treas. Reg. § 1.6011-4. As part of their obligation to file a tax return, taxpayers must disclose their participation in any reportable transaction. *Id*. para. (a). A listed transaction is a type of reportable transaction. *Id*. para. (b)(2). A taxpayer is considered to have participated in a listed transaction if the taxpayer's return reflects tax consequences or a tax strategy described in published guidance that lists the transaction as a listed transaction. *Id*. para. (c)(3)(i)(A). Without the IRS identifying the transaction as a listed transaction, no such reporting obligation exists.

Once a transaction is identified by the IRS as a listed transaction, a taxpayer's reporting obligation is significant. Listed transactions are reported on Form 8886, Reportable Transaction Disclosure Statement. Unlike most tax forms, which generally require information relating to calculation of a tax liability, Form 8886 requires narrative information unrelated to the computation of tax. For example, for the years in issue, Form 8886 asks the taxpayer to

> describe the amount and nature of the expected tax treatment and expected tax benefits generated by the transaction for all affected years. Include facts of each step of the transaction that relate to the expected tax benefits including the amount and nature of your investment. Include in your description your participation in the

---

notice-and-comment procedures transactions that were already listed as of the enactment of the AJCA.

transaction and all related transactions regardless of the year in which they were entered into. Also, include a description of any tax result protection with respect to the transaction.

Form 8886 further requires the taxpayer to

[i]dentify all individuals and entities involved in the transaction that are tax-exempt, foreign, or related. Check the appropriate box(es) (see instructions). Include their name(s), identifying number(s), address(es), and a brief description of their involvement. For each foreign entity, identify its country of incorporation or existence. For each individual or related entity, explain how the individual or entity is related.[9]

Taxpayers are not merely required to include Form 8886 with their tax returns. Form 8886 must be attached to each amended return and a copy sent to the Office of Tax Shelter Analysis at the same time Form 8886 is first filed by the taxpayer. Treas. Reg. § 1.6011-4(e)(1). If a transaction becomes a listed transaction after the filing of a taxpayer's return that reflects the taxpayer's participation in the listed transaction, then the taxpayer is required to file Form 8886 with the Office of Tax Shelter Analysis within 90 days after the date in which the transaction became a listed transaction. *Id.* subpara. (2)(i). This obligation continues until the period of limitations for that filed return has lapsed. *Id.*[10]

---

[9] This information may not be readily known to the taxpayer; however, the IRS expects the taxpayer to gather this information from third parties who, themselves, are under no obligation to provide it.

[10] That period of limitations may be affected by the IRS's act of identifying a transaction as a listed transaction. If a taxpayer does not disclose a listed transaction, the period of limitations for assessment of tax attributable to that transaction does not expire until one year after the transaction is disclosed. I.R.C. § 6501(c)(10). And we have already discussed that the obligation to disclose a listed transaction applies to previously filed returns. Treas. Reg. § 1.6011-4(e)(2). We are unaware of any cases deciding whether the IRS's action of identifying a transaction as a listed transaction has the effect of holding open the period of limitations on a return that was filed before the transaction was listed, but at a minimum, the interplay of these two provisions creates uncertainty.

Failure to report a listed transaction to the IRS can have significant financial consequences for a taxpayer.[11] Section 6707A imposes a maximum penalty of 75% of the decrease in tax resulting from a transaction, not to exceed $200,000. I.R.C. § 6707A(b)(1) and (2). This penalty, however, still applies even if the taxpayer's tax treatment of the transaction ultimately proves to be correct. In other words, this penalty does not require a tax deficiency or that the IRS's adjustment to the treatment of the transaction be sustained by the Court. The minimum penalty for failing to report a listed transaction is $10,000. I.R.C. § 6707A(b)(3).

If a penalty is imposed on a taxpayer for failure to disclose a listed transaction, an additional reporting obligation may arise for some taxpayers. If the taxpayer is required to file periodic reports with the Securities & Exchange Commission (SEC), listed or reportable transaction penalties must be disclosed as part of certain SEC filings. *See* I.R.C. § 6707A(e) (flush text). Failure to report these penalties as part of a taxpayer's SEC filings can result in yet another penalty under section 6707A(e).

In addition to the section 6707A reporting penalty, identifying a transaction as a listed transaction results in enhanced penalties if the taxpayer's treatment of the transaction is not upheld. Section 6662(a) generally imposes an accuracy-related penalty when there is an underpayment of tax required to be shown on a return. However, if a transaction is identified as a listed transaction by the IRS, and the taxpayer's treatment of that transaction is not upheld by a court, a penalty can be imposed whether or not there is a tax deficiency. *See* I.R.C. § 6662A. The starting point for the calculation of a section 6662A penalty is not the amount of tax owed; instead, it is the "reportable transaction understatement" amount. *See* I.R.C. § 6662A(b)(1)(A)(i). A

---

[11] Notably, the IRS's identification of a transaction as a listed transaction has no bearing on the merits of the transaction itself, and the IRS has previously listed, and subsequently delisted, a transaction that was upheld by courts. In Notice 98-5, 1998-1 C.B. 334, 334, the IRS characterized certain transactions as "abusive tax-motivated transactions with a purpose of acquiring or generating foreign tax credits that can be used to shelter low-taxed foreign-source income from residual U.S. tax." When the first group of listed transactions was announced, the IRS included transactions described in Part II of Notice 98-5. Notice 2000-15, 2000-1 C.B. 826. But the Courts of Appeals for the Eighth and Fifth Circuits upheld the taxpayers' treatment of transactions described in Notice 98-5. *See Compaq Comput. Corp. & Subs. v. Commissioner*, 277 F.3d 778 (5th Cir. 2001); *IES Indus., Inc. v. United States*, 253 F.3d 350 (8th Cir. 2001). Ultimately, the IRS withdrew Notice 98-5. Notice 2004-19, 2004-1 C.B. 606.

section 6662A penalty is not determined on the basis of the taxpayer's actual tax rate but at the highest rate of tax imposed. I.R.C. § 6662A(b)(1)(A)(ii). To calculate the penalty, this hypothetical understatement is multiplied by 20%; if the transaction was not disclosed to the IRS, the penalty rate increases to 30%.[12] This section 6662A penalty is separate from, and in addition to, the penalty for failure to disclose under section 6707A. It is the IRS's act of identifying a transaction as a listed transaction (as it did in Notice 2017-10) that makes section 6662A and 6707A penalties applicable.

## 2. *Reporting Obligations on Advisors*

The identification of a transaction as a listed transaction does not merely impose new reporting obligations on taxpayers who participate in the transaction; it also imposes new reporting obligations on tax advisors. A material advisor[13] with respect to a reportable transaction[14] is required to make a return setting forth detailed information.

---

[12] To explain this calculation using a hypothetical, assume a taxpayer's return shows a net loss of $1 million and a tax liability of zero. Assume that a transaction that generated a $600,000 loss is disallowed. The result of the disallowance of that loss is that the taxpayer's return will show a net loss of $400,000 and a tax liability of zero. Because the taxpayer's bottomline tax liability is unchanged, there would be no penalty under the general accuracy-related penalty rules of section 6662. If this is a listed transaction, however, a penalty would apply. The starting point for calculating the penalty is the amount of the disallowed loss, or hypothetically here $600,000. The amount of the reportable transaction understatement is calculated by multiplying that amount by the highest marginal tax rate. If the taxpayer is an individual, the highest marginal tax rate is 39.6%, resulting in a reportable transaction understatement of $237,600. I.R.C. § 1. To calculate the penalty, that amount is multiplied by either 20% (if the transaction was disclosed) or 30% (if it was not disclosed), yielding a penalty of up to $71,280 for a transaction that resulted in no understatement of tax. If the IRS had not listed that transaction, the amount of the penalty would be zero.

[13] A material advisor, defined in section 6111(b)(1)(A), is any person—

    (i) who provides any material aid, assistance, or advice with respect to organizing, managing, promoting, selling, implementing, insuring, or carrying out any reportable transaction, and

    (ii) who directly or indirectly derives gross income in excess of the threshold amount (or such other amount as may be prescribed by the Secretary) for such aid, assistance, or advice.

The threshold amount is $50,000 in the case of a reportable transaction. *See* I.R.C. § 6111(b)(1)(B)(i).

[14] As previously mentioned, when the IRS identifies a new listed transaction, it is deemed to be a reportable transaction subject to additional reporting obligations. I.R.C. §§ 6111(b)(2), 6707A(c)(2); Treas. Reg. § 1.6011-4(b)(1) and (2).

I.R.C. § 6111(a). Simply described, this rule applies to anyone who advises with respect to a reportable transaction and receives fees in excess of a threshold amount. *See* I.R.C. § 6111(b).

The reporting requirement imposed on a material advisor is significant. The IRS has adopted Form 8918, Material Advisor Disclosure Statement, as the form on which material advisor reporting must be made. Treas. Reg. § 301.6111-3(d). In addition to specific items of information, Form 8918 also requires several narrative responses. Some responses require brief descriptions; however, Form 8918 also requires a rather substantial narrative, as follows:

> Describe the reportable transaction for which you provided material aid, assistance or advice, including but not limited to the following: the nature of the expected tax treatment and expected tax benefits generated by the transaction for all affected years, the years the tax benefits are expected to be claimed, the role of the entities or individuals mentioned in [Form 8918] lines 7a or 8a (if any) and the role of the financial instruments mentioned in [Form 8918] line 9 (if any). Explain how the Internal Revenue Code sections listed in [Form 8918] line 12 are applied and how they allow the taxpayer to obtain the desired tax treatment. Also, include a description of any tax result protection with respect to the transaction.

The IRS's identifying a listed transaction essentially obligates the taxpayer's advisor to become an unwilling advisor to the IRS. This obligation arises only because the IRS has identified the transaction as a listed transaction.

In addition to the obligation to disclose a listed transaction to the IRS, material advisors also become records repositories for the IRS. Material advisors are required to maintain lists identifying each person they advised. I.R.C. § 6112(a). As with the disclosure under section 6111, the information required to be maintained as part of these lists under section 6112 is substantial. Some of the information required to be maintained is brief and straightforward, *see* Treas. Reg. § 301.6112-1(b)(3)(i), while other items of information are broad and include a "detailed description of each reportable transaction that describes both the tax structure of the transaction and the purported tax treatment of the transaction," *see id.* subdiv. (ii). The IRS also requires material advisors to retain documents such as

> [c]opies of any additional written materials, including tax analyses or opinions, relating to each reportable transaction that are material to an understanding of the purported tax treatment or tax structure of the transaction that have been shown or provided to any person who acquired or may acquire an interest in the transactions, or to their representatives, tax advisors, or agents, by the material advisor or any related party or agent of the material advisor.

*Id*. subdiv. (iii)(B). The obligation on the part of material advisors to prepare this list and retain these documents arises solely because the IRS has identified a transaction as a listed transaction.

A material advisor's failure to disclose a transaction under section 6111 or to provide a list upon demand can expose the individual to significant penalties. Like the section 6707A penalty for a taxpayer's failure to report a listed transaction, a similar penalty under section 6707 can be imposed on a material advisor. *See* Treas. Reg. § 301.6707-1. Failure to furnish the list of information required to be maintained under section 6112(a) within 20 business days after the date of request can result in a penalty of $10,000 per day until the list is provided. I.R.C. § 6708. Again, it is the IRS's act of identifying a transaction as a listed transaction (as it did in Notice 2017-10) that makes section 6707 and 6708 penalties applicable.

In sum, by its issuance, Notice 2017-10 creates new substantive reporting obligations for taxpayers and material advisors, including petitioner and the LLCs, the violation of which prompts exposure to financial penalties and sanctions—the prototype of a legislative rule. *See Mann Constr., Inc.*, 27 F.4th at 1144. We cannot see how Notice 2017-10 could be considered an interpretative rule; consequently, we find it to be a legislative rule. *See Schwalbach v. Commissioner*, 111 T.C. 215, 220–21 (1998).

> B.     *Is Notice 2017-10 Otherwise Exempt from the Notice-and-Comment Requirements Found Under the APA?*

>    1.     *Legal Background*

Having determined that Notice 2017-10 is a legislative rule, we are to assume that this IRS action—having the force and effect of law— must go through notice-and-comment rulemaking under the APA regime. *See* 5 U.S.C. § 553. Respondent contends, however, that

Congress clearly exempted the IRS from following the APA's normal procedures when it enacted section 6707A and that Notice 2017-10 thus was properly issued without notice-and-comment rulemaking. Therefore, the remaining question before us is whether Congress has established procedures so different from those required by the APA that it intended to displace the norm. For the reasons discussed below, we reject respondent's position.

We note how the APA also provides that an agency may depart from normal notice-and-comment procedures for good cause. *See* 5 U.S.C. § 553(b)(B). In this instance the IRS elected not to invoke the good cause exception when issuing Notice 2017-10; consequently, we have no reason to analyze whether and when the exception may be used. In other instances the government has invoked the good cause exception when promulgating temporary Treasury regulations.

As previously stated, the APA limits the ability of a subsequent statute to modify or supersede its procedures "except to the extent that it does so expressly." 5 U.S.C. § 559. Consistent with this limiting text, appellate courts have held that 5 U.S.C. § 559 "forbids amendment of the APA by implication." *Lane v. USDA*, 120 F.3d 106, 110 (8th Cir. 1997); *see Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1127 (7th Cir. 2008) ("[Title 5 U.S.C. §] 559 therefore prevents a statute from amending the APA by implication."). The Supreme Court has likewise emphasized that "[e]xemptions from the terms of the Administrative Procedure Act are not lightly to be presumed in view of the statement in [5 U.S.C. § 559] that modifications must be express." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955).[15]

Our view on the APA's express-statement requirement is also consistent with the Supreme Court's "already-powerful presumption against implied repeals." *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J., concurring). The Supreme Court has also stated that, absent a clearly expressed congressional intention, repeals by implication are disfavored, *id.* (citing *Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality opinion)), and implied repeals will be found only where provisions in two statutes are in "irreconcilable conflict" or where the latter act covers the whole subject of the earlier one and "is clearly

---

[15] *See also Dickinson v. Zurko*, 527 U.S. 150, 155 (1999); *Citizens for Resp. & Ethics in Wash. v. FEC*, 993 F.3d 880, 889 (D.C. Cir. 2021) ("The APA imposes a high bar, met only if 'Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm.'" (quoting *Asiana Airlines*, 134 F.3d at 397)).

intended as a substitute," *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936).

In *Marcello* the Supreme Court relied upon statutory text and legislative history to hold that the 1952 Immigration and Nationality Act displaced the hearing requirements of the APA. *Marcello*, 349 U.S. at 310. In reaching this conclusion, the Supreme Court explained:

> [W]e cannot ignore the background of the 1952 immigration legislation, its laborious adaptation of the Administrative Procedure Act to the deportation process, the specific points at which deviations from the Administrative Procedure Act were made, the recognition in the legislative history of this adaptive technique and of the particular deviations, and the direction in the statute that the methods therein prescribed shall be the sole and exclusive procedure for deportation proceedings.

*Id.* That is not to say that Congress must "employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act." *Id.* However, what is needed is an "express[]" indication of congressional intent. *Id.* Accordingly, mere differences between a statutory scheme and the APA are insufficient to establish Congress' intent to dispense with the standard APA procedures. For example, the U.S. Court of Appeals for the District of Columbia Circuit has concluded that the Federal Election Campaign Act and the APA could "readily coexist," despite various distinct procedures and requirements in the former statutory scheme. *See Citizens for Resp. & Ethics in Wash.*, 993 F.3d at 892.

The Supreme Court has further described the necessary indicia of congressional intent by the terms "necessary implication," "clear implication," and "fair implication." *See Dorsey v. United States*, 567 U.S. 260, 274–75 (2012). The Supreme Court has used these terms interchangeably. *Id.* at 274.[16]

---

[16] In the dissent Justice Scalia agreed that express-statement requirements of the sort presented in *Dorsey* are ineffective and noted how congressional repeal can be by clear implication. *Dorsey*, 567 U.S. at 289 (Scalia, J., dissenting). Justice Scalia further agrees that the standard for overcoming the strong presumption against implicit repeal is accurately described as "necessary implication" or "clear implication" but took issue with the "fair implication" formulation. *Id.* at 289–90.

In *Asiana Airlines* the D.C. Circuit looked to the statutory text in question and found an express exception granted by Congress justifying the agency's departure from standard notice and comment under the APA. *Asiana Airlines*, 134 F.3d at 397–98. In interpreting this exemption from the APA, the D.C. Circuit found irreconcilable differences between the procedures under the law in question and those of the APA. *Id.* at 398. However, the D.C. Circuit also stated generally that "[w]e have looked askance at agencies' attempts to avoid the standard notice and comment procedures, holding that exceptions under [5 U.S.C.] § 553 must be 'narrowly construed and only reluctantly countenanced.'" *Id.* at 396 (quoting *New Jersey Dep't of Env't Prot. v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980)).

Previously, the D.C. Circuit rejected the argument that terms in the Clean Water Act requiring states to create procedures for "public notice" and "public hearings" established congressional intent to displace the APA's notice-and-comment requirements. *See Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 6 (D.C. Cir. 2011) (per curiam). For its part, the U.S. Court of Appeals for the Ninth Circuit found unconvincing an agency's argument that Congress' authorization of "interim final rules" in the Affordable Care Act context displayed an intention to displace the APA's presumed notice-and-comment rulemaking. *See California v. Azar*, 911 F.3d 558, 579–80 (9th Cir. 2018).

In the light of the foregoing jurisprudence and in determining whether Congress expressly intended to exempt the IRS from the presumed APA procedures when issuing Notice 2017-10, an analysis of the "listed transaction regime" as created under the AJCA and its potential departure from the APA takes center stage.

2. *Application*

Respondent contends that Congress authorized the IRS to identify listed transactions without notice-and-comment rulemaking. Respondent points to the text of section 6707A, Treasury Regulation § 1.6011-4, and other AJCA provisions, along with the context and legislative history of the AJCA.[17]

---

[17] Some of these arguments were also made by the Commissioner in *Green Rock, LLC v. IRS*, No. 2:21-cv-01320 (N.D. Ala. filed Oct. 2, 2021), which is currently pending before the U.S. District Court for the Northern District of Alabama.

We begin with the observation that section 6707A offers no express indication from Congress exempting the IRS from the standard notice-and-comment rulemaking of the APA. *See* 5 U.S.C. § 559. Likewise, section 6011 (which is referenced by section 6707A) is also silent on any express congressional intent, and provides: "When required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or with respect to the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary." I.R.C. § 6011(a). As the Sixth Circuit observed, "[t]he statutes do not say anything, expressly or otherwise, that modifies the baseline procedure for rulemaking established by the APA." *Mann Constr., Inc.*, 27 F.4th at 1146. Unlike *Asiana Airlines*, where the D.C. Circuit found sufficient evidence of congressional intent within the statutory text, there is no comparable text found in the statute before us. *Asiana Airlines*, 134 F.3d at 399. Neither section 6011 nor 6707A says anything that would lead us to conclude that the IRS is exempt from the baseline procedures for rulemaking under the APA.

Respondent also attempts to fill the void left by Congress in the foregoing statutory text with the IRS's own regulations. Specifically, respondent notes that, before the enactment of section 6707A, Treasury regulations were issued defining a listed transaction as one "identified by notice, regulation, or other form of published guidance." *See* Treas. Reg. § 1.6011-4(b)(2). Respondent contends that this regulation apprised Congress that it would operate outside of the APA by issuing future notices (such as Notice 2017-10) without notice and comment. Respondent further maintains that when Congress later defined reportable transaction in section 6707A(c)(1), it incorporated this procedure set forth in Treasury Regulation § 1.6011-4. We are not persuaded. As an initial matter, we are less confident that Congress understood that the IRS's reference to the term "notice" within Treasury Regulation § 1.6011-4 was a clearly defined procedure for identifying listed transactions separate from traditional APA procedures, particularly since Congress' statutory text in no way authorizes such a course. To the contrary, we believe that Congress operates under the expectation that administrative agencies respect their APA obligations except when Congress expressly chooses different procedures. 5 U.S.C. § 559.

Furthermore, Congress' descriptive reference in section 6707A(c)(1) to "regulations prescribed under section 6011" does not suggest otherwise. To provide the full context, section 6707A(c)(1)

defines a reportable transaction as "any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion." This definitional text of section 6707A(c) only links the penalty for reportable and listed transactions to the five different types of reportable transactions (including listed transactions) specifically designated in Treasury Regulation § 1.6011-4(b)(2)–(7). In other words, we conclude that section 6707A(c) "addresses a 'which transactions' question, not a 'what process' question." *See Mann Constr., Inc.*, 27 F.4th at 1146.

Respondent also emphasizes the phrase "as determined under regulations prescribed under section 6011," contending that it refers solely to the manner of determination under Treasury Regulation § 1.6011-4 and implicitly blesses all processes contained therein, including the IRS's noncompliance with notice-and-comment rulemaking. As an initial matter, the general reference to "regulations prescribed under section 6011" does not establish an express congressional intention to displace fundamental APA principles for future reportable transactions. As noted previously, the D.C. Circuit concluded that statutory text in the Clean Water Act providing for alternative notice and hearing procedures did not satisfy an express congressional intent sufficient to deviate from the APA. *Lake Carriers' Ass'n*, 652 F.3d at 6. In these cases, the text of section 6707A does not reference any procedures whatsoever; and accordingly, we cannot conclude it establishes Congress' express intention to disregard APA procedures.

Considering the statutory text before us, we are unable to reasonably conclude that Congress demonstrated its express intention to deviate from normal APA procedures by implementing a reticulated scheme of the sort described in *Marcello*. To the contrary, we find respondent has failed to establish that Congress expressed any alternative procedures "so clearly different from those required by the APA that it must have intended to displace the norm." *See Asiana Airlines*, 134 F.3d at 397; *see also Mann Constr., Inc.*, 27 F.4th at 1146. Rather, the "listed transaction regime" procedures as created by Congress can be reconciled with the APA since the statutes merely establish a disclosure and penalty regime to be administered by the IRS. *See Mann Constr., Inc.*, 27 F.4th at 1146; *see also Citizens for Resp. & Ethics in Wash.*, 993 F.3d at 892. Furthermore, the so-called fair implication standard of an express congressional intent to replace the

APA—as argued by respondent—understates the burden imposed by Congress and contravenes the Supreme Court's interchangeable use of the relevant formulations. *Dorsey*, 567 U.S. at 274; *see supra* p. 17. We therefore reject this argument.

Even if we were to look to the congressional text "regulations prescribed under section 6011" in conjunction with Treasury Regulation § 1.6011-4, respondent's argument fares no better. Like the statutory text, Treasury Regulation § 1.6011-4 does not seem very concerned with setting up processes but rather is directed to naming categories of transactions subject to IRS reporting requirements. While Treasury Regulation § 1.6011-4 does include those transactions as determined by the IRS to be tax avoidance transactions and identified "by notice, regulation, or other form of published guidance," we remain convinced this regulatory text can also be read to demonstrate that the "as determined" clause was intended to co-exist with the requirements of the APA and for the IRS to identify future reportable transactions under the APA's ordinary regime of notice and comment. *See Citizens for Resp. & Ethics in Wash.*, 993 F.3d at 892. In any event, our task is to determine whether Congress, not the IRS, amended the APA's presumed application.

We acknowledge that Congress understood that the IRS had identified listed transactions before the enactment of the AJCA. We also recognize that Congress, through its enactment of the AJCA, was acknowledging the IRS's disclosure framework already in place, with the goal of strengthening its efficacy. *See* S. Rep. No. 108-192, at 90 (2003); s*ee also* H.R. Rep. No. 108-548, pt. 1, at 261 (2004).[18] But, we cannot accept the enactment of the AJCA as Congress' blanket approval of the IRS's method of identifying a syndicated conservation easement as a listed transaction in Notice 2017-10 without notice and comment.

Next, respondent contends that Congress is "presumed to [have been] aware" of the IRS's actions when it amended section 6707A to enhance the monetary penalties for taxpayers through subsequent enactment; however, Congress is likewise equally aware of the normal APA rulemaking requirements, which it must "expressly" override. *See*

---

[18] Respondent also points to repealed text found in section 6707A, which required the IRS to submit an annual report to Congress' two tax writing committees, as congressional oversight and evidence sufficient to supplant the standard APA procedures. It is true that at one point in recent history there was an annual mandatory reporting requirement; however, we do not see how the IRS's prior reporting obligation establishes Congress' clear intent to override the APA.

5 U.S.C. § 559; *see also Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 55 (2011) (rejecting the concept of carving out unique treatment for tax law under the APA). Like the Sixth Circuit, we disagree with respondent's contention that Congress' subsequent inaction means that it was "endorsing and ratifying" the IRS's practice to bypass the notice-and-comment requirements for future reportable transactions. As well stated by the Sixth Circuit, "[i]naction may, but does not always, mean ratification" and "rarely suffices to show express modification of the APA's bedrock procedural guarantees given the raft of potential explanations for inaction on Capitol Hill." *Mann Constr., Inc.*, 27 F.4th at 1147.

We similarly find it inappropriate to assume Congress expected that any subsequent amendment or addition to the listed transaction regime by the IRS would be made without notice and comment under the APA. In these cases, Notice 2017-10 was not issued until 2016.[19] Accordingly, we cannot subscribe to any alternative theory that prior notice and comment made at the time of promulgation of Treasury Regulation § 1.6011-4 satisfies the IRS's ongoing obligation to comply with the APA when issuing Notice 2017-10. To the contrary, we find Congress has made it clear that each substantive rule of general applicability, including amendment or revision thereto, must comply with the APA. *See* 5 U.S.C. § 552.

Finally, we do not find a committee print from 2020 relating to continued congressional oversight of syndicated conservation easement transactions to be persuasive evidence that Congress intended to override the APA's applicability to the IRS's listing of transactions. *See* Staff of S. Comm. on Finance, 116th Cong., Syndicated Conservation-Easement Transactions Exhibits 1–133, S. Prt. 116-44 (Comm. Print 2020).[20]

We do not dispute the significance of congressional oversight of so-called "Syndicated Conservation-Easement Transactions" and the efforts to curtail these transactions. However, we do dispute a

---

[19] We find the matter before us to be limited to the IRS's actions with respect to Notice 2017-10, and we do not reach any conclusion as to those listed transactions the IRS identified when Treasury promulgated Treasury Regulation § 1.6011-4(b)(2).

[20] The exhibits included letters from both IRS Acting Commissioner, David J. Kautter, dated July 12, 2018, and IRS Commissioner Charles P. Rettig, dated February 12, 2020, regarding congressional requests for information and analyses related to Notice 2017-10.

conclusion that congressional oversight hearings, written statements by the respective chairs of the Senate Finance Committee at the oversight hearings, and testimony related to these transactions from executive branch members can serve as express congressional intent sufficient to override the requirements of the APA with respect to Notice 2017-10.[21] The foregoing congressional actions alone are insufficient to supplant the APA, since the Supreme Court has told us exemptions from the terms of the APA are not presumed and must be expressed by Congress. *See Marcello*, 349 U.S. at 310 (considering legislative history in conjunction with the final operative statutory text to find Congress' express intent to override the APA).

After considering these additional arguments, we remain unconvinced that Congress expressly authorized the IRS to identify a syndicated conservation easement transaction as a listed transaction without the APA's notice-and-comment procedures, as it did in Notice 2017-10.

IV.    *Conclusion*

We determine summary adjudication to be appropriate in petitioner's favor as to prohibiting the imposition of section 6662A penalties against the LLCs in these cases since Notice 2017-10 was issued without notice and comment as required under the APA. Accordingly, we will grant petitioner's Cross-Motions for Summary Judgment, in part, and set aside[22] Notice 2017-10, including the imposition of section 6662A penalties with respect to reportable transactions.

---

[21] Generally speaking, legislative history related to the Code includes congressional members' statements made in markup sessions, congressional tax writing committees, committee reports, conference committee reports, and postenactment tax committee reports.

[22] Although this decision and subsequent order are applicable only to petitioner, the Court intends to apply this decision setting aside Notice 2017-10 to the benefit of all similarly situated taxpayers who come before us.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

FOLEY, GUSTAFSON, MORRISON, BUCH, ASHFORD, URDA, COPELAND, JONES, GREAVES, and MARSHALL, *JJ.*, agree with this opinion of the Court.

KERRIGAN, PARIS, PUGH, and TORO, *JJ.*, concur in the result, and TORO, *J.*, agrees with Part III.A.

GALE and NEGA, *JJ.*, dissent.

PUGH, *J.*, concurring in the result: I write separately to explain why, after careful consideration of the history of the statute at issue alongside the tools of statutory construction and precedent, set forth below, I reach the same conclusion as the majority.

Section 6707A was enacted in the American Jobs Creation Act of 2004 (AJCA), § 811(a), Pub. L. No. 108-357, 118 Stat. 1418, 1575–76. It did two things. First, it imposed penalties for failure to disclose information with respect to a "reportable transaction." § 6707A(a) and (b). Second, it defined "reportable transaction" and "listed transaction" (a subcategory of reportable transaction) by reference to the IRS's process for identifying those transactions in the already-existing regulations under section 6011. Section 6707A(c)(1) confirmed the IRS's authority to "determine[] under regulations prescribed under section 6011" whether a transaction is "of a type which the [IRS] determines as having a potential for tax avoidance or evasion," thereby making it a "reportable transaction." A reportable transaction that is "the same as, or substantially similar to, a transaction specifically identified by the [IRS] as a tax avoidance transaction for purposes of section 6011" is a "listed transaction." § 6707A(c)(2).

Pursuant to this authority, the IRS identified syndicated conservation easement transactions as listed transactions in I.R.S. Notice 2017-10, 2017-4 I.R.B. 544.[1] They joined a list first issued in 2000 that originally included 7 transactions, added 23 more transactions by the time the AJCA was enacted, and added 5 more by the time Notice 2017-10 was issued (making syndicated conservation easement transactions the 36th). *See Recognized Abusive and Listed Transactions*, IRS, https://www.irs.gov/businesses/corporations/listed-transactions (last visited Aug. 1, 2022).[2]

I agree with the opinion of the Court that Notice 2017-10 is a legislative rule. "[A] substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." *Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 207 (4th Cir. 1989). By identifying syndicated conservation easement transactions as listed transactions, Notice 2017-10 exposed taxpayers and representatives required to disclose these transactions under Treasury Regulation § 1.6011-4 to stiff

---

[1] The opinion of the Court and my concurrence address the validity of Notice 2017-10 only, not the tax treatment of the underlying transaction.

[2] No transactions have been added to the list since Notice 2017-10.

penalties under section 6707A for failure to disclose. Notice 2017-10, § 3, 2017-4 I.R.B. at 546; *see also* op. Ct. pp. 8–15 (discussing obligations imposed by Notice 2017-10 on taxpayers and material advisors).

And the IRS used authority delegated to it under sections 6011 and 6707A to do so. *See CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1587 (2021) (noting that "the Code [through sections 6011 and 6707A] delegates to the Secretary of the Treasury, acting through the IRS, the task of identifying particular transactions with the requisite risk of tax abuse" and stating the IRS "[u]se[d] that authority" to determine "that so-called micro-captive transactions must be reported because of their potential for tax evasion"); *see also Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1144 (6th Cir. 2022) (stating that "the reality" is "that the relevant statutory terms [section 6707A(c)] are not self-defining, which explains why Congress delegated to the IRS authority to 'determine[]' and 'identif[y]' which transactions need to be reported"). "When an agency relies on expressly delegated authority to establish policy . . . courts generally treat the agency action as legislative, rather than interpretive, rulemaking." *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 622 (4th Cir. 2018) (citations omitted) (holding that a U.S. Department of Health & Human Services policy for calculating the amount of financial assistance available to certain hospitals set forth in a Frequently Asked Questions document is a legislative rule in part because the agency relied on statutorily delegated authority to "determine[]" what constitutes "costs incurred").

In general a legislative rule is subject to the notice-and-comment requirements of the Administrative Procedure Act (APA) under 5 U.S.C. § 553(b). *SIH Partners LLLP v. Commissioner*, 150 T.C. 28, 41 (2018), *aff'd*, 923 F.3d 296 (3d Cir. 2019). The parties agree that issuance of Notice 2017-10 did not comply with these notice-and-comment requirements.

The APA enumerates exceptions to its general rule of notice-and-comment rulemaking, including "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefore in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). The IRS did not invoke the good cause exception when it issued Notice 2017-10. *See* op. Ct. p. 16.

Another exception to the notice-and-comment requirement is a necessary consequence of courts' applying a basic precept of statutory

construction: "[O]ne legislature cannot abridge the powers of a succeeding legislature." *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 135 (1810). A succeeding legislature can alter a prior legislative act "when the legislature shall please to alter it." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). As Justice Scalia wrote in his concurrence in *Lockhart v. United States*, 546 U.S. 142, 148 (2005):

> Among the powers of a legislature that a prior legislature cannot abridge is, of course, the power to make its will known in whatever fashion it deems appropriate—including the repeal of pre-existing provisions by simply and clearly contradicting them. Thus, in *Marcello v. Bonds*, 349 U.S. 302 (1955), we interpreted the Immigration and Nationality Act [(INA), ch. 477, 66 Stat. 163 (1952),] as impliedly exempting deportation hearings from the procedures of the [APA], despite the requirement in § 12 of the APA that "[n]o subsequent legislation shall be held to supersede or modify the provisions of this Act except to the extent that such legislation shall do so expressly," 60 Stat. 244. The Court refused "to require the Congress to employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act." 349 U.S., at 310. We have made clear in other cases as well, that an express-reference or express-statement provision cannot nullify the unambiguous import of a subsequent statute. In *Great Northern R. Co. v. United States*, 208 U.S. 452, 465 (1908), we said of an express-statement requirement that "[a]s the section . . . in question has only the force of a statute, its provisions cannot justify a disregard of the will of Congress as manifested either expressly *or by necessary implication* in a subsequent enactment." (Emphasis added.) A subsequent Congress, we have said, may exempt itself from such requirements by "fair implication"—that is, *without* an express statement. *Warden v. Marrero*, 417 U.S. 653, 659–660, n. 10 (1974). *See also Hertz v. Woodman*, 218 U.S. 205, 218 (1910).

The opinion of the Court cites Justice Scalia's concurrence in *Lockhart* for the proposition that the APA's express-statement requirement is consistent with the presumption against implied repeals. *See* op. Ct. p. 16. And Justice Scalia acknowledges the Supreme Court's admonition in *Marcello* that exemptions from the APA are "not lightly to be presumed" in the light of the APA's express-statement

requirement. 5 U.S.C. § 559; *Lockhart*, 546 U.S. at 148–49; *see Marcello*, 349 U.S. at 310. But he then states that this assertion "may add little or nothing to our already-powerful presumption against implied repeals." *Lockhart*, 546 U.S. at 149 ("An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003))). Justice Scalia's stated reason for writing separately was to emphasize that express-statement requirements are not binding and that "[w]hen the plain import of a later statute directly conflicts with an earlier statute, the later enactment governs, *regardless* of its compliance with any earlier-enacted requirement of an express reference or other 'magical password.'" *Id.* at 147, 149; *see also Dorsey v. United States*, 567 U.S. 260, 274–75 (2012) (quoting this statement when describing the requisite inquiry as not a search for a magical password but rather for assurance that "ordinary interpretive considerations point clearly in th[e] direction" of superseding an express-statement requirement). I understand Justice Scalia (and the Supreme Court) to be cautioning us not to elevate express-statement requirements to exalted status or to gloss over the text of the later enacted statute in the name of "fundamental APA principles." *See* op. Ct. p. 20.

Our task, then, is to read the later statute (section 6707A) and determine whether its plain import directly conflicts with an earlier statute (5 U.S.C. § 553(b)). Stated differently, we must decide "whether Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm." *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998) (analyzing a non-APA statutory scheme for potential conflict with the APA's baseline rule of notice and comment).

This analysis will produce a range of results. Some procedures will fall on the "irreconcilable-with-the-APA" side of the line. *See, e.g.*, *Marcello*, 349 U.S. at 309 (holding that INA procedures superseded the APA's notice-and-comment requirement because, among other reasons, Congress mandated that the INA procedures "shall be the sole and exclusive procedure for determining the deportability of an alien under this section" (quoting INA § 242(b), 66 Stat. at 210)); *Asiana Airlines*, 134 F.3d at 398 (holding statute mandating that the FAA "publish in the Federal Register an initial fee schedule and associated collection process as an interim final rule, pursuant to which public comment will be sought and a final rule issued" superseded the APA's notice-and-comment requirement because it required the FAA to follow procedures

that could not be reconciled with the APA (quoting 49 U.S.C. § 45301(b)(2))). Other procedures will fall on the "coexistence-with-the-APA" side of the line. *See, e.g.*, *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 17, 19 (D.D.C. 2010) (holding statute providing that an agency "may promulgate any interim final rules as the Secretary determines are appropriate to carry out this [part]" did not supersede the APA because the enabling provision was "permissive," "wide-ranging," and "d[id] not contain any specific deadlines for agency action").

There is little doubt that in enacting section 6707A Congress knew about and endorsed the existing administrative procedure for determining reportable transactions and identifying listed ones. The statute defines the terms by reference to the procedure by which the IRS determines or identifies them. *See* § 6707A(c)(1) (defining a "reportable transaction" by reference to the IRS's "determin[ation] under regulations prescribed under section 6011" that the transaction has a potential for tax avoidance or evasion); § 6707A(c)(2) (defining "listed transaction" by reference to "a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011").

Specifically, the procedure invoked by section 6707A is "identifi[cation] by notice,[3] regulation, or other form of published

---

[3] Here, "notice" refers to an IRS notice—"a public pronouncement by the [Internal Revenue] Service that may contain guidance that involves substantive interpretations of the Internal Revenue Code or other provisions of the law" and is published in the Internal Revenue Bulletin, Internal Revenue Manual 32.2.2.3.3 (Aug. 11, 2004); it should be distinguished from a "notice of proposed rulemaking" published in the Federal Register pursuant to the APA, 5 U.S.C. § 553(b); *see, e.g.*, Treas. Reg. § 1.6662-3(b)(2) ("The term 'rules or regulations' includes the provisions of the Internal Revenue Code, temporary or final Treasury regulations issued under the Code, and revenue rulings or *notices (other than notices of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin*." (Emphasis added.)).

We have concluded in other contexts that IRS notices are mere statements of the Commissioner's position and lack the force of law. *Phillips Petroleum Co. v. Commissioner*, 101 T.C. 78, 99 n.17 (1993), *aff'd*, 70 F.3d 1282 (10th Cir. 1995). Here, by contrast, we have concluded that Notice 2017-10 is a legislative rule because it imposes substantive obligations on taxpayers by operation of section 6707A.

Because we are to presume Congress is aware of existing law, including existing regulations, I am more confident than the majority, *see* op. Ct. p. 19, that Congress understood that the IRS had already identified and would continue to identify transactions as listed, perhaps even by issuing notices. But, as I explain below,

guidance." Treas. Reg. § 1.6011-4. This existing procedure "under regulations prescribed under section 6011" of determining reportable transactions and identifying listed ones was introduced in temporary regulations in 2000 that were finalized in 2003. T.D. 9046, 2003-1 C.B. 614, 616, 68 Fed. Reg. 10,161, 10,163 (Mar. 4, 2003).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978) (citations omitted). "So too, where . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Id.* at 581. We thus presume that Congress knew of Treasury's (and the IRS's) interpretation of section 6011 in the reportable and listed transaction disclosure regulations when Congress enacted section 6707A in 2004. Therefore, section 6707A is a "[s]ubsequent statute" that adopts a procedure that could potentially "supersede or modify" the general APA requirement in 5 U.S.C. § 553 that legislative rules must go through notice and comment. 5 U.S.C. § 559.

The opinion of the Court discounts these principles of statutory construction and the history of section 6707A. It begins its analysis with its conclusion that "section 6707A offers no express indication from Congress exempting the IRS from the standard notice-and-comment rulemaking." *See* op. Ct. p. 19. It is difficult to conjure up what would satisfy this requirement short of a magical password, to wit, "the APA is displaced." And I respectfully disagree with its dismissal of section 6707A(c) as mere "definitional text" that "only links" the statutory penalties to the regulatory scheme, and its summary adoption of the U.S. Court of Appeals for the Sixth Circuit's conclusion that section 6707A(c) "addresses a 'which transactions' question, not a 'what process' question." *See* op. Ct. p. 20 (quoting *Mann Constr.*, 27 F.4th at 1146).[4]

---

I do not believe that this presumption that Congress knew about the IRS procedure for listing transactions by notice wins the day for the IRS. And on this point, the majority and I do agree.

[4] Our decision in this case is appealable to the U.S. Court of Appeals for the Fourth Circuit. *See* § 7482(b)(1); *Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). As a court of nationwide jurisdiction, we should not simply adopt the opinion of another circuit, but rather are obliged to perform the necessary analysis of section 6707A ourselves, situating it among the range of

Two additional points also respond to this conclusion in the opinion of the Court. First, whereas the opinion of the Court starts (and apparently ends) with the heading of section 6707A(c), *see* op. Ct. p. 20 ("This definitional text . . . ."), I would begin with the text of section 6707A. *See Yates v. United States*, 574 U.S. 528, 553 (2015) (Kagan, J., dissenting). Second, despite (or in contradiction of) its conclusion that section 6707A addresses a "which transactions" question, the Sixth Circuit also recognized "the reality that the relevant statutory terms [section 6707A(c)(1) and (2)] are not self-defining, which explains why Congress delegated to the IRS authority to 'determine[]' and 'identif[y]' which transactions need to be reported." *Mann Constr.*, 27 F.4th at 1144. That is, the statute points elsewhere: to the "regulations prescribed under section 6011" and their method for determining reportable transactions and identifying listed transactions. By failing to follow where the statute leads, the opinion of the Court implies that Congress cannot adopt procedures by referencing them in a statute. This abridges "the power [of Congress] to make its will known in whatever fashion it deems appropriate." *Lockhart*, 546 U.S. at 148 (Scalia, J., concurring).

The remaining question then is whether, in adopting this procedure by reference, Congress "must have intended to displace the norm" of APA notice and comment because the adopted procedure is "so clearly different from" it. *Asiana Airlines*, 134 F.3d at 397.

The procedures at issue in *Marcello* and *Asiana Airlines* set a high bar for "displacing the norm" of APA notice and comment. In both Congress mandated that the agency use a procedure different from or in direct conflict with the one in the APA. The statute in *Marcello* provided an alternate procedure and stated that it "shall be the sole and exclusive procedure." 349 U.S. at 309 (quoting INA § 242(b)). The statute in *Asiana Airlines* required the use of a procedure that, by its terms, "cannot be reconciled with the notice and comment requirements of [the APA]." 134 F.3d at 398 ("[T]he agency was to issue not a proposed rule, but an 'interim final rule,' and comment was to be sought 'pursuant to,' not in anticipation of, that rule." (quoting 49 U.S.C. § 45301(b)(2))).

Here, Congress did not mandate a specific alternative rulemaking procedure different from or in direct conflict with the APA. Rather, section 6707A authorized the IRS to identify listed transactions "by notice, regulation, or other form of published guidance," Treas. Reg.

---

statutory provisions that may or may not have displaced APA notice-and-comment rulemaking.

§ 1.6011-4(b)(2), permissive text more similar to that in *Coalition for Parity, Inc.*, 709 F. Supp. 2d at 19. And the procedure "by notice, regulation, or other form of published guidance" can, by its terms, be reconciled with the APA; nothing in it directly conflicts with the APA like the "sole and exclusive" or "interim final rule, pursuant to which public comment will be sought" procedures at issue in *Marcello* and *Asiana Airlines*.

Any argument to the contrary puts a great deal of weight on the contention that identification "by notice" is irreconcilable with the APA. And the weight that the phrase "by notice" can bear is circumscribed by the adoption of penalties in section 6707A to give force to the listed transaction regime. To conclude that Congress was ratifying the IRS's pre-AJCA practice of listing transactions without notice and comment we must explain why, after section 6707A added penalties, notice and comment could not be required for future notices.[5] The imposition of penalties is, after all, a critical reason we conclude that the listing of a transaction is a legislative rule subject to APA notice and comment.

I would be loath to supplant the APA requirements even if I could come up with my own policy justification for their nonapplication; that is not our place, but Congress'. Congress also is presumed to be aware that to supersede APA notice and comment, it must do so "expressly," *see* 5 U.S.C. § 559, or by "necessary implication," "clear implication," or "fair implication," *see Dorsey*, 567 U.S. at 274–75. And a policy justification for skipping notice and comment does not necessarily render a statutory scheme irreconcilable with the APA.

Finally, it is worth noting that if notice-and-comment rulemaking impedes the IRS's ability to identify transactions with the potential for tax avoidance or evasion, the APA and the Internal Revenue Code already provide options. Under the APA, the IRS could invoke the good cause exception, as it did when issuing regulations targeting another listed transaction, the so-called Son-of-Boss transaction, for example. *See* T.D. 9062, 2003-2 C.B. 46, 48 ("These temporary regulations are necessary to prevent abusive transactions of the type described in the Notice 2000-44. Accordingly, good cause is found for dispensing with notice and public procedure pursuant to 5 U.S.C. 553(b)(B) and for

---

[5] Our holding does not invalidate notices that had been issued before Congress enacted penalties. Those notices are not before us today and the circumstances surrounding their issuance are distinguishable. And Congress would be presumed to know about and adopt pre-existing notices when it adopted pre-existing procedures for identifying listed transactions.

dispensing with a delayed effective date pursuant to 5 U.S.C. 553(d)(1) and (3).”). And under section 7805(b)(3), the IRS “may provide that any regulation may take effect or apply retroactively to prevent abuse.”

In sum, I concur in the result because the procedure referenced by section 6707A—“identifi[cation] by notice, regulation, or other form of published guidance” by the IRS, Treas. Reg. § 1.6011-4(b)(2)—is not a “procedure[] so clearly different from [that] required by the APA that it must have intended to displace the norm,” *Asiana Airlines*, 134 F.3d at 397.

KERRIGAN, PARIS, ASHFORD, and COPELAND, *JJ.*, agree with this opinion concurring in the result.

TORO, *J.*, concurring in the result: As the opinion of the Court and Judge Pugh correctly conclude, I.R.S. Notice 2017-10, 2017-4 I.R.B. 544, which identified the type of transaction at issue in this case as a listed transaction, is a legislative rule under the Administrative Procedure Act (APA). *See* 5 U.S.C. §§ 551, 553. But the Internal Revenue Service (IRS) did not follow the APA's notice-and-comment procedures when adopting the rule. *See* 5 U.S.C. § 553(b) and (c). Therefore, to resolve this case, we must decide whether the American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, 118 Stat. 1418, exempted the Secretary of the Treasury from following the APA's requirements for purposes of identifying listed transactions after the enactment of the AJCA. *See* 5 U.S.C. § 559. If not, then the section 6662A penalty determined by the Commissioner here cannot apply.

The parties' dispute focuses on section 6707A(c), and in particular, whether that provision adopted by reference Treasury Regulation § 1.6011-4, T.D. 9046, 2003-1 C.B. 614, 616, 68 Fed. Reg. 10,163 (Mar. 4, 2003) (2003 regulation).[1] In my view, it is unnecessary to decide whether Congress did or did not incorporate the 2003 regulation in section 6707A(c). Even if (for the sake of analysis) I were to agree with the Commissioner that (1) the 2003 regulation established procedures for identifying listed transactions and (2) Congress adopted those procedures by reference when enacting section 6707A(c), the Commissioner still would not prevail because the procedures reflected in the 2003 regulation are not, by their terms, inconsistent with the APA. Put another way, the Commissioner could have followed both the procedures set out in the 2003 regulation and the APA when issuing Notice 2017-10.

Specifically, contrary to the Commissioner's position, the statement in the 2003 regulation that the IRS may identify listed transactions "by notice," *see* Treas. Reg. § 1.6011-4(b)(2), is fully compatible with the APA. For example, the IRS could comply with the APA by issuing a notice that establishes good cause for proceeding without a prior opportunity for comment. *See* 5 U.S.C. § 553(b)(B). Moreover, as Judge Pugh observes, *see* Pugh concurring op. p. 32, "the weight that the [pre-AJCA regulatory] phrase 'by notice' can bear is

---

[1] The regulation has since been amended, but for purposes of this discussion I focus on the version that was in effect before the adoption of the AJCA. One pre-AJCA amendment, *see* T.D. 9108, 2004-1 C.B. 429, 68 Fed. Reg. 75,128 (Dec. 30, 2003), had no effect on the provisions discussed.

circumscribed by [Congress's] adoption of" a new and significant enforcement mechanism. "The imposition of penalties is, after all, a critical reason we conclude that the listing of a transaction is a legislative rule subject to APA notice and comment." *See* Pugh concurring op. p. 32. I am not persuaded that Congress, when instituting this penalty regime, intended to strip away the protections of the APA for future listed transactions, *see, e.g.*, *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019) (explaining that the purpose of notice-and-comment rulemaking is to "give[] affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes" while "afford[ing] the agency a chance to avoid errors and make a more informed decision"); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1929 n.13 (2020) (Thomas, J., concurring in the judgment in part, dissenting in part) ("[T]he notice and comment process at least attempts to provide a 'surrogate political process' that takes some of the sting out of the inherently undemocratic and unaccountable rulemaking process." (quoting Michael Asimow, *Interim-Final Rules: Making Haste Slowly*, 51 Admin. L. Rev. 703, 708 (1999))), or to ratify a practice developed for a fundamentally different context, i.e., the IRS's pre-AJCA practice of listing transactions without notice and comment and without a showing of good cause for not providing notice and comment.

Absent conflict in the instructions Congress provided in the AJCA and the instructions Congress provided in the APA, the Commissioner had an obligation to follow both. *See Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936) ("Where there are two acts upon the same subject, effect should be given to both if possible."); *see also Dorsey v. United States*, 567 U.S. 260, 274 (2012) (discussing the standard for departures from the APA); *Nat'l City Bank*, 296 U.S. at 503 (discussing the standard for implied repeals); *Lockhart v. United States*, 546 U.S. 142, 149 (2005) (Scalia, J., concurring) (discussing the standard for implied repeals). As all agree, this the Commissioner did not do. Accordingly, the section 6662A penalty may not be sustained, as the opinion of the Court properly concludes.

I write separately to offer a few observations on the extent to which section 6707A(c) might be viewed as incorporating the 2003 regulation, given the focus on this issue by the parties and my colleagues.

*AJCA Background*

To begin with, I agree with Judge Pugh and the Commissioner that the context in which Congress enacted section 6707A and the other provisions of the AJCA is important. *See Marcello v. Bonds*, 349 U.S. 302, 310 (1955) (noting that the Court could not "ignore the background of the . . . legislation"). To summarize the context here, in 2000, in an effort to address tax shelters, the U.S. Department of the Treasury and the IRS issued temporary and proposed regulations under section 6011. *See* Temp. Treas. Reg. § 1.6011-4T, 65 Fed. Reg. 11,205 (Mar. 2, 2000); Prop. Treas. Reg. § 1.6011-4, 65 Fed. Reg. 11,271 (Mar. 2, 2000). The regulations, which were finalized in 2003 after several rounds of revision,[2] required taxpayers to provide information with respect to "reportable transactions," *see* Treas. Reg. § 1.6011-4(a), a category that was defined to include "listed transactions," *see id.* para. (b)(1) and (2). Thus, the statutory terms we are focused on in this case were first defined by temporary and proposed regulations culminating in the 2003 regulation.

When it adopted the AJCA in 2004, Congress established new penalties and other rules that hinged on the terms "reportable transaction" and "listed transaction." *See, e.g.*, AJCA §§ 811 and 812, 814–816, 118 Stat. at 1575–84.[3] Congress appears to have drawn on the regulatory definitions of those terms to craft the statutory definitions. *See* I.R.C. § 6707A(c); Treas. Reg. § 1.6011-4(b)(1) and (2). Additionally, the statutory definitions refer to "determin[ations] under regulations prescribed under section 6011," *see* I.R.C. § 6707A(c)(1), and to "identif[ications] . . . for purposes of section 6011," *see* I.R.C. § 6707A(c)(2). So, in my view, there is no doubt that Congress "legislated against the backdrop of [the 2003 regulation]" when it enacted the AJCA, as the Commissioner contends, *see* Resp't's Mem. in Supp. of Obj. to Mot. for Partial Summ. J. 35, and that Congress sought,

---

[2] The revisions included changes made later in 2000, *see* Temp. Treas. Reg. § 1.6011-4T, 65 Fed. Reg. 49,909 (Aug. 16, 2000); Prop. Treas. Reg. § 1.6011-4, 65 Fed. Reg. 49,955 (Aug. 16, 2000), one set of changes in 2001, *see* Temp. Treas. Reg. § 1.6011-4T, 66 Fed. Reg. 41,133 (Aug. 7, 2001); Prop. Treas. Reg. § 1.6011-4, 66 Fed. Reg. 41,169 (Aug. 7, 2001), and two sets of changes in 2002, *see* Temp. Treas. Reg. § 1.6011-4T, 67 Fed. Reg. 41,324 (June 18, 2002); Prop. Treas. Reg. § 1.6011-4, 67 Fed. Reg. 41,362 (June 18, 2002); Temp. Treas. Reg. § 1.6011-4T, 67 Fed. Reg. 64,799 (Oct. 22, 2002); Prop. Treas. Reg. § 1.6011-4, 67 Fed. Reg. 64,840 (Oct. 22, 2002).

[3] These penalties and rules appear in sections 6111, 6112, 6501, 6662A, 6664, 6707, and 6707A, among others.

at least to some extent, to incorporate the structure Treasury and the IRS had established there into the new penalty regime.

But this general observation is insufficient to determine with precision what Congress incorporated when it enacted section 6707A(c). To answer that question, I turn to the text of the provisions at issue. *See Nat'l Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519, 544 (2012) ("[T]he best evidence of Congress's intent is the statutory text."); *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) ("There is . . . no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."); *Grajales v. Commissioner*, 156 T.C. 55, 61 (2021) ("*NFIB*, 567 U.S. 544, directs us to look to the statutory text as 'the best evidence of Congress's intent.'"), *aff'd*, 47 F.4th 58 (2d Cir. 2022).

*Section 6662A Penalty and Section 6707A(c) Definitions*

The question ultimately before the Court is whether petitioner may be held liable for the penalty imposed by section 6662A. That penalty applies if a taxpayer's return reflects a "reportable transaction understatement," which includes, among others, items attributable to "any listed transaction." I.R.C. § 6662A(a) and (b). Section 6662A(d) defines the terms "listed transaction" and "reportable transaction" by reference to "the respective meanings given to such terms by section 6707A(c)."

Section 6707A(c)(2) tells us that "[t]he term 'listed transaction' means a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011." In other words, a listed transaction is a reportable transaction with certain characteristics.

The term "reportable transaction" is also a defined term. It means "any transaction with respect to which information is required to be included with a return or statement because, as determined under regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion." I.R.C. § 6707A(c)(1).

*Analysis*

Several observations relevant to the APA analysis follow from the statutory text. First, neither section 6662A nor section 6707A (or, for that matter, section 6011) refers to the APA. Second, although

section 6707A(c)(2), which defines listed transactions, contemplates that the Secretary must "specifically identif[y]" certain types of transactions as having the characteristics required to be listed transactions, the statute is silent on how that identification should be made. Third, section 6707A(c)(1), which defines reportable transactions, is more explicit about the Secretary's procedural responsibilities. It provides that the authority contemplated by it—that is, the authority to require certain information to be included with a return or statement for a specific reason—will be exercised "as determined under regulations prescribed under section 6011."

Nothing in the statutory text thus expressly turns off the APA requirements that would otherwise govern the Secretary's designation of a listed transaction under section 6707A(c)(2). *See* 5 U.S.C. § 559. Moreover, I see nothing in the text of section 6707A(c)(2) that gives rise to a "fair" implication of a departure from the APA requirements, let alone a "necessary" or "clear" one. *See Dorsey*, 567 U.S. at 274.

The Commissioner, however, contends that Congress's use of the clause "as determined under regulations prescribed under section 6011" in defining reportable transactions, I.R.C. § 6707A(c)(1), signals its wish to supplant the APA's procedures in favor of the 2003 regulatory provision. That regulation defines listed transactions to include transactions that the IRS "identified by notice, regulation, or other form of published guidance as a listed transaction." Treas. Reg. § 1.6011-4(b)(2). I am skeptical that the "as determined" clause bears the weight the Commissioner places on it, for a few reasons.

To begin, it is worth noting that the "as determined" clause (with its reference to regulations under section 6011) appears in the definition of the term "reportable transaction" in section 6707A(c)(1), but is absent from the definition of the term "listed transaction" in section 6707A(c)(2). The term that matters most in deciding this case is "listed transaction," not "reportable transaction."[4] And courts assume that when Congress includes specific language in one provision and excludes it from a neighboring provision, it does so intentionally. *See, e.g., Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("We have often noted that when 'Congress includes particular language in one section of a statute but

---

[4] The Commissioner asserts that the returns in this case improperly reported a listed transaction. *See* I.R.C. § 6662A(a) and (b)(1) and (2)(A). He does not assert that the returns reported a reportable transaction other than a listed transaction with a significant purpose of avoiding or evading federal income tax. *See* I.R.C. § 6662A(b)(2)(B).

omits it in another'—let alone in the very next provision—this Court 'presume[s]' that Congress intended a difference in meaning." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))); *Grajales v. Commissioner*, 47 F.4th at 62 (2d Cir. 2022) ("When Congress uses certain language in one section of the statute yet omits it in another section of the same Act, 'it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion' of that language." (quoting *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021))), *aff'g* 156 T.C. 55. Thus, whatever meaning one is intended to glean from the "as determined" clause for purposes of section 6707A(c)(1), it does not shed much light on the procedural steps the Secretary must take in making the specific identification called for by section 6707A(c)(2). And it would be curious for Congress to signify its decision to depart from APA procedures with respect to listed transactions by adding the "as determined" clause to section 6707A(c)(1) (which defines a reportable transaction), rather than section 6707A(c)(2) (which defines a listed transaction). Put differently, one would have expected instructions about how the Secretary must "specifically identif[y]" the transactions that should be listed in the definition of that term, rather than in the definition of the more general "reportable transaction."

Furthermore, the 2003 regulation was focused on the characteristics of reportable transactions and not on processes for identifying them. Indeed, it did not contain any overall provisions prescribing any process the Secretary would follow in identifying reportable transactions. Rather, it simply provided that "[a] reportable transaction is a transaction described in any of the paragraphs (b)(2) through (7) of this section." Treas. Reg. § 1.6011-4(b)(1). It went on to explain that "[t]here are six categories of reportable transactions: listed transactions, confidential transactions, transactions with contractual protection, loss transactions, transactions with a significant book-tax difference, and transactions involving a brief asset holding period." *Id.* The only text that may be fairly viewed as process focused in the entire 2003 regulation is a phrase of nine words in the definition of a listed transaction, as described below. In the absence of any overall direction in the 2003 regulation about process, it seems difficult to agree with the Commissioner's view that the "as determined" clause was intended to signify a congressional decision to depart from the APA-mandated process for administrative rulemaking.

Of course, as the Commissioner would surely point out, we are concerned specifically with listed transactions in this case. And in

defining listed transactions, the 2003 regulation did specify a process, as follows:

> A listed transaction is a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified *by notice, regulation, or other form of published guidance* as a listed transaction.

Treas. Reg. § 1.6011-4(b)(2) (emphasis added). In the Commissioner's view, the "as determined" clause in section 6707A(c)(1) incorporated this regulatory definition, including the nine procedural words highlighted above.

This argument, however, overlooks a critical fact: When it enacted the AJCA, Congress adopted its own statutory definition of "listed transaction" at section 6707A(c)(2):

> The term "listed transaction" means a reportable[5] transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011.

Comparing the two definitions, one can see that the statute essentially paraphrases the regulatory definition with one key difference: It omits the nine procedural words italicized above. The Commissioner's entire case rests on those nine words, and their omission in the statute is notable in light of the otherwise parallel definitions.

To put this point in another way, if Congress had intended to adopt a specific process for the Secretary to use in identifying listed transactions, Treasury Regulation § 1.6011-4(b)(2) provided a ready model. Yet, despite apparently incorporating other words from the regulation into the statutory definition, Congress did not incorporate the nine procedural words. Instead, it chose to modify them, omitting any mention of process from section 6707A(c)(2). Faced with that Congressional choice, I would be disinclined to read section 6707A(c)(1)

---

[5] The regulatory definition begins by stating that a listed transaction is "a transaction" instead of "a reportable transaction." But the inclusion of the word "reportable" in the statutory definition is consistent with the structure of the 2003 regulation, which defined listed transactions as a subset of reportable transactions. *See* Treas. Reg. § 1.6011-4(b)(1) and (2).

and the "as determined" clause as a back-door way of establishing a process for identifying listed transactions under section 6707A(c)(2) (as the Commissioner urges). *See Knight v. Commissioner*, 552 U.S. 181, 188 (2008) ("The fact that [Congress] did not adopt [a] readily available and apparent alternative strongly supports rejecting [a] reading . . . [that relies on the rejected alternative text].").

To summarize then, the Commissioner argues that section 6707A(c)(1) overrides the APA by cross-referencing the 2003 regulation. But he overlooks that (1) the regulation is barely concerned with process, mentioning it in just nine words in the definition of listed transaction; (2) Congress adopted a statutory definition of listed transaction that paraphrases the regulation but excludes the nine procedural words; and (3) unlike the definition of reportable transaction in section 6707A(c)(1), the definition of listed transaction in section 6707A(c)(2), which is what we are primarily concerned with here, does not include a cross-reference to regulations under section 6011.

All of this suggests that the "as determined" clause in section 6707A(c)(1) is an awfully thin reed to support an express or implied departure from the APA. *See* 5 U.S.C. § 559. Although I do not think we need to decide the issue to dispose of this case, it seems to me difficult to conclude that Congress incorporated in section 6707A(c) the process set in the 2003 regulation when Congress seems to have gone out of its way to exclude the process-related words of the regulation from the text that it used.

With these observations, I agree with the opinion of the Court's disposition of the section 6662A penalty issue.

COPELAND, *J.*, agrees with this opinion concurring in the result.

GALE, *J.*, dissenting: In my view, in enacting section 6707A, with its express reference to the regulations under section 6011, Congress intended to except the identification of "listed transactions" from the notice-and-comment requirements of the Administrative Procedure Act (APA). *See* 5 U.S.C. § 553(b). I would first note that I agree with the lion's share of the analysis in Judge Pugh's concurring opinion, including the conclusion that the Internal Revenue Service's identification of syndicated conservation easement transactions as listed transactions is a legislative rule. Importantly, I agree with its critique of the opinion of the Court's and the Court of Appeals for the Sixth Circuit's conclusion that the reference in section 6707A to the section 6011 regulations "addresses a 'which transactions' question, not a 'what process' question." *See* op. Ct. p. 20 (quoting *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1146 (6th Cir. 2022)). Instead, I conclude that the reference to the section 6011 regulations goes to the heart of the process question.

And, as Judge Pugh notes, the procedure in the section 6011 regulations for making a transaction a "listed" one, subject to disclosure requirements, that is referenced in section 6707A for penalty purposes, is "identifi[cation] *by notice*, regulation, or other form of published guidance." Treas. Reg. § 1.6011-4(b)(2) (2003) (emphasis added). The reference to identification "by notice" is significant. A "notice" is a long recognized species of written guidance published by the Internal Revenue Service "when the Service determines that a public concern requires a speedy response" and is correspondingly "[i]ssued without public notice and comment." Stephanie Hunter McMahon, *Classifying Tax Guidance According to End Users*, 73 Tax Law. 245, 256–58 (2020). This type of "notice" is to be distinguished from the notice entailed in notice-and-comment rulemaking enumerated in the APA. *See* 5 U.S.C. § 553(b).

Regulations under section 6011 permitting the identification of listed transactions "by notice" were first promulgated as temporary and proposed regulations in 2000. *See* T.D. 8877, 2000-1 C.B. 747; Prop. Treas. Reg. § 1.6011-4, 65 Fed. Reg. 11,269 (Mar. 2, 2000). The regulations (Treas. Reg. § 1.6011-4) were made final in 2003. T.D. 9046, 2003-1 C.B. 614. By the time section 6707A was enacted in 2004, the Service had identified 30 "listed transactions" pursuant to the section 6011 regulations, all without adherence to the notice-and-comment requirements of the APA. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v.*

*Pons*, 434 U.S. 575, 580–81 (1978). "So too, where . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Id.* at 581. In this instance, Congress was not only presumptively aware when cross-referencing the section 6011 regulations of the Service's interpretation of its authority under section 6011 to identify a listed transaction without adhering to the notice-and-comment requirements of the APA. *See* 5 U.S.C. § 553(b). Congress was actually aware, having cited the temporary and final regulations permitting identification "by notice" in all accompanying committee reports. *See* H.R. Rep. No. 108-755, at 595 (2004) (Conf. Rep.), *as reprinted in* 2004 U.S.C.C.A.N. 1341, 1649; S. Rep. No. 108-192, at 89 (2003), 2003 WL 22668223, at *89; H.R. Rep. No. 108-548, pt. 1, at 260 (2004), 2004 WL 1380512, at *260. Consistent with the foregoing, Judge Pugh's concurring opinion finds "little doubt that in enacting section 6707A Congress knew about and endorsed the existing administrative procedure for determining reportable transactions and identifying listed ones." Pugh concurring op. p. 29. Since this existing administrative procedure is "identifi[cation] by notice, regulation or other form of published guidance," Judge Pugh acknowledges that it could potentially supersede or modify the APA's general requirement that legislative rules must go through notice and comment. *See* 5 U.S.C. § 553; Pugh concurring op. p. 30. Whether the APA has been superseded or modified depends, Judge Pugh reasons, upon the application of a caselaw test best summarized as "whether Congress has established procedures so clearly different from those required by the APA that it must have intended to displace the norm." *See* 5 U.S.C. § 553; Pugh concurring op. p. 28 (quoting *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998)).

I agree with Judge Pugh that this is the appropriate test in the circumstances. I part ways, however, with her application of the test. Plainly put, identification of a listed transaction "by notice" cannot be reconciled with APA notice-and-comment procedures. *See* 5 U.S.C. § 553. The latter requires prior notice to and opportunity for comment from the public for an identification to become effective—a significant and time-consuming set of procedural steps—while the former does not. Congress cross-referenced and thereby incorporated the former procedure, well-established at the time, into section 6707A. I find it very unlikely that, in cross-referencing the extant identification procedures in the section 6011 regulations, Congress intended as significant a modification to them as APA notice and comment would require without any mention of that modification in the accompanying committee

reports. The "necessary," "clear," or "fair implication," *see Dorsey v. United States*, 567 U.S. 260, 274–75 (2012), of Congress' action in incorporating the section 6011 regulations into the statute is that Congress intended to displace the otherwise applicable notice-and-comment requirements of the APA. *See* 5 U.S.C. § 553.

I find further support for this interpretation of section 6707A in Congress' subsequent enactment of section 4965 two years later. Section 4965 imposes excise taxes on tax-exempt entities and their managers for participation in listed transactions. *See* Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. No. 109-222, § 516, 120 Stat. 345, 368 (2006). At that time, in its description of then-present law, the conference report on this legislation described a listed transaction as follows:

> A listed transaction means a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011 . . . *and identified by notice*, regulation, or other form of published guidance as a listed transaction.

H.R. Rep. No. 109-455, at 125 (2006) (Conf. Rep.), *as reprinted in* 2006 U.S.C.C.A.N. 234, 321 (emphasis added). Thus, a subsequent Congress understood and reconfirmed the authority of the Secretary (and the Service as his or her designee) to identify a transaction as "listed" merely "by notice." The views of a subsequent Congress in a committee report concerning the interpretation of a prior enactment are entitled to significant weight. *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980); *Sykes v. Columbus & Greenville Ry.*, 117 F.3d 287, 293–94 (5th Cir. 1997); *United States v. Wilson*, 884 F.2d 174, 178 n.7 (5th Cir. 1989); *Sorrell v. Commissioner*, 882 F.2d 484, 489–90 (11th Cir. 1989), *rev'g* T.C. Memo. 1987-351; *Johnsen v. Commissioner*, 794 F.2d 1157, 1163 (6th Cir. 1986), *rev'g* 83 T.C. 103 (1984).

Because I conclude that Congress intended in section 6707A to displace the APA requirement of notice and comment for the identification of listed transactions, I dissent from the opinion of the Court.

NEGA, *J.*, dissenting: The American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, 118 Stat. 1418, and its legislative history are consistent with the Congress' decades-long effort to respond to the kind of transactions addressed by the AJCA. Such transactions historically have been viewed as a threat to the voluntary compliance tax system measured in terms greater than any direct loss in revenue from the transactions themselves. This long history set the stage for the AJCA.

Further, I am not aware of any debate over whether the AJCA was intended to allow the Internal Revenue Service (IRS) to improve the administration of the tax law and enhance general compliance. In my view, the legislation does exactly that by limiting the application of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706. I cannot agree that Congress enacted legislation so obviously in contradiction of the APA as the majority does.

Under one basic rule of statutory interpretation, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978). We can also take judicial notice that Congress would be aware of the inherent delays were the APA fully applicable. Congress could easily have decided that the delays inherent in the APA were outweighed by faster application of the AJCA to tax returns reflecting such transactions. I believe this to be true.

The issue is whether, in adopting the IRS's existing regulations into the statutory scheme, Congress "must have intended to displace the norm" of APA notice and comment because the adopted procedure is "so clearly different from" it. *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998). I find that to be the case.

I believe that the majority's holding is worryingly close to a standard requiring "magical passwords in order to effectuate an exemption from the Administrative Procedure Act." *Marcello v. Bonds*, 349 U.S 302, 310 (1955). In that case, after exhaustive analysis, the Supreme Court found that there was enough evidence to find that the 1952 Immigration and Nationality Act did not violate the APA.

Congress was aware of the IRS's rulemaking in this area when it enacted the AJCA to bolster the IRS's efforts by adding a penalty to the existing regime. Congress ratified the existing procedures for identifying

these transactions even in the absence of strict adherence to the APA's notice-and-comment requirements in those procedures. Section 6707A(c)(1) and (2) confirm my understanding. The cross-reference to the regulations under section 6011 constitutes strong textual evidence of Congress' intent to replace the ritual application of the APA in this area.

I disagree that Congress failed to "expressly" override the application of the APA to the IRS process incorporated into law by the AJCA. The nature of the legislation as well as the legislative history associated with it that the opinion of the Court finds unpersuasive leads me to the conclusion that Congress did not intend to enact the AJCA penalty regime subject to the time-consuming notice-and-comment procedures of the APA. In the light of congressional knowledge of the existence of the APA when enacting the AJCA, I cannot agree that Congress added a penalty regime to enforce the existing IRS rulemaking without addressing an obvious APA vulnerability, at least, to the then-listed transactions.

For these reasons, I dissent.